**FILED**
**Jan 20, 2026**
**11:06 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **CODY ROGERS,** | ) | **Docket No.: 2024-80-5410** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MITSUBISHI CHEMICAL** | ) | |
| **AMERICA, INC.,** | ) | **State File No.: 82389-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **TOKIO MARINE AM. INS. CO.,** | ) | |
| **Carrier.** | ) | **Judge Shaterra R. Marion** |
| | ) | |

---

### COMPENSATION ORDER GRANTING BENEFITS

---

The Court held a compensation hearing on January 13, 2026, in this post-settlement medical benefits case. The main issues are whether Mr. Rogers is entitled to occupational therapy; whether he gave timely notice of a left-ankle injury; and attorney's fees. For the reasons below, the Court holds that Mr. Rogers is entitled to occupational therapy, gave timely notice of his ankle injury, and is entitled to fees.

### History of Claim

Mr. Rogers suffered a traumatic brain injury at work on October 25, 2021. The parties reached a settlement agreement, which allowed for open future medical treatment with Dr. Michael Muhlbauer and other physicians. The Court approved the settlement in November 2024.

Mitsubishi transports Mr. Rogers to his medical appointments. Mr. Rogers testified that he wants to try to drive himself to regain some independence.

In January 2025, occupational therapist Leanna Simmons evaluated Mr. Rogers and recommended that he have 12-15 hours of driving training, to be completed over six to eight sessions. After that evaluation, Dr. Muhlbauer referred Mr. Rogers to Ms. Simmons for "eval and treat for driving therapy."

Mitsubishi submitted the referral to utilization review, which denied the driving therapy. Mr. Rogers appealed to the medical director, who issued a modification to approve one initial assessment and an evaluation of his driving ability.[1]

On May 7, Mr. Rogers injured his ankle at his home.[2] That same day, he went to an urgent care clinic and was diagnosed with a lateral malleolus fracture. On May 9, he saw Dr. Tyler Fraser, who took x-rays and prescribed a walking boot. Mr. Rogers progressed to a brace and healed without the need for surgery. Mr. Rogers testified that currently his ankle is fine.

Dr. Fraser testified that his work-related injury more likely than not caused his ankle injury. His May 16 medical note states that the ankle injury stemmed from Mr. Rogers's balance problems from his traumatic brain injury, which occurred on the job. Dr. Fraser testified that Mr. Rogers will likely continue to have gait instability and possibly additional falls due to his work-related brain injury.

When questioned about Mr. Rogers's ability to drive, Dr. Fraser did not know if Mr. Rogers has the mobility necessary to safely drive a vehicle. But he said that he saw Mr. Rogers while he was also suffering from a broken ankle instead of his "full baseline."

Mr. Rogers's attorney emailed counsel for Mitsubishi on May 27, requesting a panel for Mr. Rogers's ankle injury or for Dr. Fraser to be his doctor for his ankle injury. Mitsubishi did not provide a panel until December 18. That panel did not include Dr. Fraser.

Mr. Rogers argues that due to Mitsubishi's delay in providing a panel for his ankle injury, Dr. Fraser should be designated the authorized treating physician, and his treatment of Mr. Rogers's ankle should be covered as part of his work accident.

Mitsubishi does not dispute causation of the ankle injury but argues that if the Court finds that Mr. Rogers gave notice of his ankle injury, he should treat through one of the physicians on the December 18 panel. It also contends that the unauthorized treatment from Dr. Fraser should not be covered.

---

[1] The utilization review modification was issued after the evaluation from Ms. Simmons had already been completed.

[2] The medical record initially said the Mr. Rogers was injured at work, but he corrected the record on June 12 to note he was injured at home.

## Findings of Fact and Conclusions of Law

### *Occupational Therapy*

The first issue is whether the occupational driving therapy ordered by Dr. Muhlbauer is medically necessary. Mr. Rogers must prove his entitlement to the therapy by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2023). The Court finds he met this burden.

When an employee suffers a compensable injury, an employer must furnish "such medical and surgical treatment as ordered by the attending physician . . . made reasonably necessary by accident[.]" *Id.* § 50-6-204(a)(1)(A).

The Appeals Board held that for recommendations of a treating physician to be deemed within the scope of "reasonable" and "medically necessary" treatment, and therefore compensable under section 50-6-204(a)(1)(A), the treatment must: "(1) comply with generally accepted medical standards; (2) be clinically appropriate as to type, frequency, extent, site, and duration; (3) not be primarily for the convenience of the patient or provider; and (4) be the most cost-effective alternative among reasonably equivalent alternatives." *Rhea v. Titan Transfer, Inc.*, 2023 TN Wrk. Comp. App. Bd. LEXIS 16, at *7-8 (Apr. 11, 2023).

Mitsubishi argues that the occupational therapy is not "medical treatment" because it does not comply with the factors in *Rhea*. However, occupational therapy meets the criteria for medical treatment. The utilization review report gives details for brain injury rehabilitation that show occupational therapy complies with generally accepted medical standards. Further, the report outlines the duration of the treatment, consistent with the referral.

Mitsubishi argues that it takes him to doctor's appointments, so the occupational therapy would be primarily for his own convenience. However, it acknowledges it does not transport him everywhere. Mr. Rogers regaining his ability to drive himself is not simply for his own convenience but is part of his rehabilitation after his injury. Also, the argument that six driving therapy sessions is more expensive than arranging transportation for Mr. Rogers for the rest of his life is unpersuasive.

The parties agreed that Dr. Muhlbauer is one of Mr. Rogers's authorized treating physicians. His opinion is thus presumed medically necessary. *Id.* § 50-6-204(a)(3)(H). Therefore, the burden of proof "shifts to the employer to prove by a preponderance of the evidence that such prescribed treatment is *not* medically necessary." *Rhea*, 2023 TN Wrk. Comp. App. Bd. LEXIS 16 at *8-9 (Emphasis in original).

Mitsubishi did not offer any medical testimony to show that the occupational therapy was not medically necessary. Instead, it relied on utilization review, which denied the therapy. However, the medical director authorized an occupational therapy evaluation without knowing that the evaluation had already happened. Mitsubishi also asked Dr. Fraser his opinion on Mr. Rogers's ability to drive, but he said he was unable to make that assessment.

The Court holds that this evidence is insufficient to rebut Dr. Muhlbauer's presumption as the authorized treating physician, and the occupational therapy recommended by Dr. Muhlbauer shall be approved by Mitsubishi.

*Ankle Injury – Notice*

An employee must give written notice of a work-related injury within 15 days of the work accident, unless the employee can show his employer had actual knowledge of his injury or he had a reasonable excuse for not giving notice within 15 days. *Id.* § 50-6-201(a)(1).

However, a distinction exists between "notice of a work accident and awareness of the nature and extent of any medical conditions resulting from that accident." *Dyer v. Petsmart, Inc.*, 2024 TN Wrk. Comp. App. Bd. LEXIS 5, at *20 (Mar. 1, 2024). The Appeals Board in *Dyer* pointed out that the statute requires written notice after the *accident* unless the employer had actual knowledge of the *accident*. *Id.* at *20-21 (Emphasis in original). Tennessee courts have held that an employee "is required to give timely notice of the accident but need not understand or appreciate the nature or extent of the injuries arising from that accident at the time notice is given." *Id.* at *21.

Here, Mitsubishi did not argue that Mr. Rogers did not give timely notice of his original work accident in 2021. He therefore did not need to give formal notice of his ankle injury as one of the "medical conditions resulting from that accident."

However, he gave timely notice in this case, even if it were required. Dr. Fraser testified that he first discussed the possibility that Mr. Rogers's ankle injury was related to his work accident on May 16. On May 27, 11 days later, Mr. Rogers's counsel emailed Mitsubishi to ask for a panel or for Dr. Fraser to be the authorized treating physician for the ankle injury.

Therefore, the Court holds that Mr. Rogers satisfied the notice requirement for his ankle injury.

*Ankle Injury – Treating Physician*

Mr. Rogers must prove his entitlement to medical benefits for his ankle by a preponderance of the evidence. *Id.* § 50-6-239(c)(6). The Court finds he met this burden.

Here, Mitsubishi does not dispute causation for the ankle injury, and Dr. Fraser relates it to the work accident. "An employer who fails to provide a panel of physicians runs the risk of having to pay for unauthorized medical care in the event the trial court determines that a panel should have been provided." *Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016).

In *Young*, the employer learned of the employee's accident within eight days but did not provide a panel until "several weeks" after the injury. *Id.* at *1. The employee selected a panel physician, but the employer denied the claim instead of scheduling an appointment with the physician. *Id.*

Additionally, the employee sought his own treatment before the employer offered this panel, and after the deadline for employers to either deny a claim or provide a panel. *Id.* at *18. The Appeals Board found that the employee "justifiably sought treatment on his own" and was entitled to continue treating with his own doctor as his authorized physician. *Id.* at *18-19.

Here, as in *Young*, the Court finds Mr. Rogers justifiably sought treatment on his own. After he hurt his ankle, he went to Dr. Fraser, and after discussing that it might be related to his work injury, Mr. Rogers's counsel requested either a panel or for Dr. Fraser to be named his authorized treating physician on May 27. Mitsubishi did not provide a panel until December 18, almost seven months later.

The Court also finds that Mitsubishi's failure to timely provide a panel entitles Mr. Rogers to continue to treat with Dr. Fraser. The Court thus designates Dr. Fraser as Mr. Rogers's authorized treating physician for his ankle injury. Dr. Fraser's past treatment for Mr. Rogers's ankle shall also be paid for by Mitsubishi under the Tennessee fee schedule.

*Attorney's Fees*

The Court approved a settlement agreement in November 2024, which states, in relevant part: "Employer agrees to pay for reasonable and necessary, future medical expenses for the work injury under Tennessee Code Annotated section 50-6-204."

Section 50-6-226(d)(1) provides an employee's attorney may be awarded a fee when the employer "[f]ails to furnish appropriate medical . . . treatment or care . . . provided for in a settlement[.]" *Id.*

This provision does not require a detailed analysis. *McCool v. Prof'l Care Servs.,* 2025 TN Wrk. Comp. App. Bd. LEXIS 59, at*18 (Nov. 18, 2025). "Employer either provided the medical benefits as described in the court-approved settlement agreement, or it did not." *Id.*

Here, Mitsubishi denied medical care that Mr. Rogers is entitled to under both the settlement agreement and section 50-6-204. Therefore, Mr. Rogers's attorney is entitled to fees under 226(d)(1)(A).

**IT IS THEREFORE ORDERED** as follows:

1. Mitsubishi or its workers' compensation carrier shall provide Mr. Rogers reasonable and necessary future benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A), including the occupational driving therapy ordered by Dr. Muhlbauer and past and future treatment for his ankle injury ordered by Dr. Fraser, under the fee schedule.

2. Mr. Rogers's request for Dr. Fraser to be his authorized treating physician for his ankle injury is granted.

3. The Court grants Mr. Rogers's request for attorney's fees under Tennessee Code Annotated section 50-6-226(d)(1)(A) because of Mitsubishi's failure to approve the occupational therapy and ankle treatment. Mr. Rogers's attorney shall file a motion for fees and expenses incurred in obtaining approval for this treatment, itemized by task, date of performance, time spent, and the requested hourly rate within ten days of the date of this order. Mitsubishi shall have five days to respond.

4. Mitsubishi shall pay the $150.00 filing fee to the Clerk within five business days of this order becoming final, for which execution might issue as necessary.

5. Unless appealed, this order shall become final 30 days after entry.

**ENTERED January 20, 2026.**



_____

**Judge Shaterra R. Marion**
**Court of Workers' Compensation Claims**


## APPENDIX

Exhibits:

1. Deposition of Dr. Tyler Fraser, with exhibits one and three
2. *[For Identification Only]* Occupational Therapy Driving Evaluation performed by Leanna Simmons
3. Jointly Submitted Medical Records
4. 2024 Settlement Documents
5. Panel of Physicians sent to Mr. Rogers by Mitsubishi
6. Party Stipulation on Occupational Therapy


## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this Order was sent as indicated on January 20, 2026.

| Name | Email | Service sent to: |
|------|-------|------------------|
| Jonathan May, Employee's Attorney | **X** | jmay@forthepeople.com<br>jvavak@forthepeople.com |
| Tiffany Hranicky, Employer's Attorney | **X** | tbhranicky@mijs.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*